Okay, when you're ready. Thank you, Your Honor. If I may reserve four minutes. Okay. Thank you, Your Honor. Mark Sparks on behalf of the plaintiff and appellants James Copelan and Brian Lowenthal, please accord counsel. The case, this case is really interesting in that both my clients had insurance and yet one has ended up with judgment against him for $10,000 for property damage with his license suspended and liens against his property. And the other, James Copelan, has ended up with a judgment that he can't collect on while his insurance company has on scene fifth to collect its $16,000. You say he can't collect on is because it's, the other one is judgment proof, is that the problem? Yes, Your Honor. Okay. It is. And so the issue here is what went wrong? What happened here? And the story is really interesting in that James Copelan's Mercedes, about nine months old, was side swiped while it was parked causing $15,000 or $16,000 in damage. Ultimately, James Copelan sought through his own insurer, Liberty, an effort to recover his diminution in value. And I gather, although I think it's not quite stated, that his policy must have had a similar exclusion for collision, that is to say no diminution in value, that's why they didn't pay that to him? Yes, sir. Yes, sir. His policy, the Liberty policy does include that in the uninsured portion. So there's no claim against his policy that they didn't compensate him properly. He's got a claim about seeking the subrogation, but there's no claim against his insurance company that they didn't pay off under the policy properly. Not exactly. There's a claim against his company, excuse me, Liberty, that they went ahead and improperly repaired a vehicle that should not have been repaired or was not repaired. Oh, I see. Oh, he wanted totaled out. Yes, Your Honor. I forgot that part. And so to start with Mr. Lowenthal's policy and the decision by Infiniti, his insurer, not to defend him in the court, the court should look at first the actual policy of Mr. Lowenthal at record 286 and 287. There, the policy by Mr. Lowenthal said we will pay damages up to the policy limits state, and that's a mistake, should be stated, on the declarations page for bodily injury and property damage for which an insured person is legally liable because of an accident originating from the operation of an insured auto. We will not cover punitive or exemplary damages, and that's a record citation 286 to 287. Infiniti was presented with the claim by Mr. Lowenthal but refused to defend him in a small claim court action. And was there a later Superior Court action? So there was an actual trial in Superior Court. Yes, Your Honor. So the argument, well, listen, small claims, we couldn't have been there anyway. There was a later Superior Court action. Yes, Your Honor. In fact, there was another defendant. Initially, there was the Platinum Car Rental Company that owned the rental car Mr. Lowenthal was driving at the time he hit James Copeland's Mercedes. That company, in fact, sent a lawyer to the Superior Court to argue the case, and there was actually a trial brief submitted by my co-counsel, Monty Day. And so it was litigated fully and fairly in the trial court in the Superior Court, SW8, I believe, in Inglewood. That judgment is now final. So I think the hardest, or maybe I should say the question that will answer most of the other questions in the case is really as to whether or not diminution in value is covered under the third-party liability policy for Mr. Lowenthal. Well, I think that's a key component, but it doesn't, I don't think that's a... There's some other questions, but could you argue that point? Because once we understand the answer to that one, some of the other answers follow. Yes, I can, Your Honor. As Your Honor knows, diminution in value was the small claim, it's in the small claims petition, it's at Record Site 119, and diminution in value was the issue in the small claims court in the Superior Court. It is our... But I gather that one of the problems that's caused a problem in this case is what is meant by diminution in value. Because the district court, and I guess the defendants, allude to stigma damages, and I gather that's not what you're talking about. It's not, Your Honor. So maybe we need to clarify that to start out with. Sure, and I think we do that in a footnote in our reply, I can't remember. Well, it's not exactly a footnote, it's the central problem here, because it's why everything has gotten, I think, pretty confused. I think so, Your Honor. We never use the term stigma damages, and our suggestion to the courts have been, take a Coke can... You're maintaining that there was actual property damage. Physical damage to the car. Physical damage, which wasn't repairable. Or wasn't repaired, and maybe wasn't repairable. And consistent with Carson, to the pre-accident mechanical safe condition. The pre-accident safe mechanical condition. They like to say that I want a showroom floor condition. I never allege that. So, to answer the court's question, stigma is not something we pledge. Stigma would just be when you go to the car dealer and you say, hey, has this car been wrecked? Well, at some point your complaint just talks about the car is worthless, without saying why. It does in some portions of the complaint, Your Honor. But mostly we continue to allege in the complaint, at the record citations, I can give it to the court, it's in the complaint, that it was not repairable to its pre-accident mechanical safe and cosmetic condition. Or, I don't think cosmetics use. But we do allege that consistent with Carson. And therein lies the problem with James Copeland's, now we're back to Infinity. Why Infinity made a mistake in this case is they elected to repair a vehicle that was not repairable to its pre-accident safe mechanical condition. Well, you know, you're trying to turn this all into physical. I'm not sure you need to do that. It's very common for cars to be repaired after even a very serious accident. And the car is perfectly safe. But because of the accident and repair, even though the car is perfectly safe and to the outside observer it looks exactly like it did before the accident, nonetheless any rational buyer won't pay the price that they would have paid had there not been the accident. Now, you can call it Sigma, you can call it something else, but it's just market reality. There's a diminution in value because of the accident and repair. Even if the repair was proper and even if the repair was properly done. It's the first question I ask when I buy a used car, Your Honor. Of course, of course. So I'm not sure you need to try to shoehorn this case into, well, this car cannot be properly repaired. Now, I understand you're making an economic argument that it should have been totaled out. That's a different one. But I'm not sure if I were you, I'd walk away from the diminution in value that a buyer, a rational buyer coming in and says, has this car ever been in an accident? If the answer is yes, that diminishes the value. We all know that. Agreed, Your Honor. And it's consistent with the civil code provisions we submitted in a letter to the court recently, last week. The civil code provisions section 3300, 3333, and civil code section 3282, which the gist of it is, the detriment is a loss or harm to the property. So certainly, the stigma damage or the diminution in value of a vehicle that's been wrecked, significantly wrecked, as James Copeland's vehicle was, suffered a loss or harm that is recoverable under the laws of California. So what's your argument based upon the terms of the policy that diminution in value is covered with respect to third-party liability? With respect to third-party liability, Your Honor, it's record citation 286 is the insuring agreement. Record citation 286 is the insuring agreement for the infinity policy. And the argument is the policy itself provides that they will pay for bodily injury and property damage for which an insured person is legally liable. So then we go to the definition of property damage. Yes, Your Honor. And that's where they say, and that's actually to the left, left column. I got that. Yes, Your Honor. It means physical damage to tangible property, including destruction or loss of its use, which is caused solely by an accident covered under this law. But what they're insuring against is damages for that, right? So that, so the really key term is damages for. Your Honor's picked up on a key point of their response, because they want to find a distinction with because of, and they want to say, well, if it was because of, well, then maybe you'd get stigma or diminution. But in fact, there's a treatise, WENT, I believe we cite, W-I-N-D-T, and there's other cases we cite from other jurisdictions that say that's the distinction without a difference. At best, in an insuring policy such as this, such an ambiguity should be, in an adhesion contract, should be read against the insurer, not the insured, thinking, oh, I'm covered for property damage. And if the Court will just indulge me for a second, that's the remarkable thing here, is people driving now on California roads who think that if they sideswipe a car and are covered for property damage are not, because not only does merchant shipping from 1946, the Supreme Court say that this is a measure of damage, diminution in value, there's now this California Civil Code, excuse me, KC, CACI, jury instruction, 3903J, which says if that happens and someone unfortunately gets sued, the judge is strongly encouraged under that, under the CACI rules, to submit this instruction that does include diminution in value. And so you end up, back to the beginning when I said this was a remarkable instance, where people like Mr. Lowenthal who thought they had property damage coverage end up with a judgment against them and can't pay it and have their license suspended and have liens filed against their property. And then, I don't know if that's, if the Court has any further questions on infinity, I'm happy to engage. I would also point out, and this would be an argument that would help you along, with respect to collision rather than third-party liability, in Part D, there is a very explicit exclusion of diminution. And there's no exclusion here. You're right, Your Honor. The insuring agreement only says we will not cover punitive or exemplary damages. And that's on Record Citation 286. So, if I may step briefly to, it looks like I've exhausted most of my time. Could you address one thing for me because I thought this was not covered very well in the briefs. There's also a claim in our defense, and I think the district court adopted it, that because, I forget which of these people is which, but one of them, the person who owned the Mercedes didn't actually own the car, that there's a problem. That's interesting because that was actually litigated or brought to the attention of the trial court and the Superior Court. And setting aside the case law, we show that in cases such as conversion, the person with the right to possession has sufficient standing to seek redress. So does James Copeland here as the lessee, has the immediate possession of the vehicle. And if not him, who, for goodness sake? But setting all that aside, this was Record Citation 129, starts the portion of our trial brief or Monty Osborne's trial brief in the Superior Court addressing lessee status. And our point, in addition to the conversion cases, is if you really thought that your insurer, Mr. Lowenthal, was protected from this lawsuit because James Copeland was in lessee status, then go defend him. Go, by goodness sake, go defend him with that. It's res judicata at this point, and as we point out in our reply brief, the collateral attack. Your opponents said it wasn't raised in the Superior Court. You say it was. It's Record Citation 129 in a trial brief, Your Honor. It's plain as day. There's like three or four pages discussing lessee status. But by all intents and purposes, this insuring agreement required them to raise that and, frankly, the diminution in value defense to protect Mr. Lowenthal. If I may reserve the remainder I have. Good morning, Your Honors. May it please the Court. Frank Falzetta for Defendant Liberty Mutual Fire Insurance Company. I'm going to take seven minutes of our 15 minutes of time. Mr. Danaher, on behalf of Infinity, is going to take the remaining eight minutes to be notified of the clerk in advance. Okay. And I want to make sure that the panel understands the distinction between my client and Mr. Danaher's client. I represent Liberty Mutual, which was the first party insurer for Mr. Copeland. Now, we understand that. There was a lot of confusion. He used the name. I didn't think there was any confusion. No, and the claims against you are, number one, you shouldn't have repaired it. You should have totaled it out. And, number two, your segregation claim was in derogation of the interests and rights of your insured, right? Exactly right, Your Honor. It's important to know what they've abandoned. They've abandoned any notion that we owed any amount for diminution in value because not only is that not correct under the three seminal cases in California, Ray... Okay, you said it's off the table. It is off the table. You don't have to tell me why. Okay. Why is it off the table? No, you don't have to tell me why. Okay, all right. So that's off the table. So what they have remaining then is this claim really that I'll call wrongful repair, that we shouldn't have repaired it because it couldn't be returned to its pre-accident, safe, mechanical, and cosmetic condition. That's the only claim that remains against my client other than the subrogation claim, which I'll get to in a minute. Well, let's assume that the current complaint is inadequate on that because it says it, but it's somewhat... It does say that, but it says it somewhat vaguely. Why shouldn't they have leave to amend? Well, first of all, they never asked for leave to amend. Well, generally, they don't require it. It's too late if you ask on a... No, actually, that's not true, but go ahead. Well, secondly, there's nothing in any of the... Either the complaint or attachment to the complaint, which is Mr. Monty Day's letter regarding the allegations relating to the repairability of the auto that suggests anything other than what was at issue in Baldwin. In fact, this case is on all fours with Baldwin. In Baldwin, all they said was they intoned the standard from Wray that said you have to repair to its pre-accident, condition for safety, mechanical, and cosmetic appearance, but that's all they alleged in Baldwin, and that's all they alleged here. Well, that's right, and that's the question of... Well, first of all, the letter attached, it does get somewhat more specific, but if it's inadequate, I mean, that's why I said it does seem... It says what was said in Baldwin, but why couldn't you just be more specific? Well, the letter doesn't say more. All it says is what it was rejected again in Carson, which is that it's a unibody construction vehicle and that those are impossible to repair. It has those kinds of allegations in the letter, nothing more than that, and that was rejected in Carson specifically. The court said, that's not enough. You have to show specifically why the car wasn't returned to its former mechanical, safe, and cosmetic condition. Specifically, what facts? Where are they? There's this discussion about crunch proofness or something. That's the same allegation that was in Carson. It's that they're crushed stones and it's unibody construction, and you don't know whether it's really crash worthy unless you crash test it again. Same allegation was in Carson. What's wrong with that, though? I mean, why isn't that a legitimate problem? It may be a legitimate problem if you can't repair the vehicle to its pre-accident, substantially to its pre-accident condition, and that's the standard in California, but you have to have facts to suggest why that's the case. They've had all the facts all the way along. If there was something wrong with that Mercedes Benz after Liberty paid to repair it, and by the way, it was repaired at Marco's Auto Body Shop here in Pasadena at their request. If there was a problem with that Mercedes when it returned, either because of safety issues, mechanical issues, or cosmetic issues, they had all the facts to say that all the way along. They had the facts to say it in the letter that Monty Day wrote that's attachment four to the complaint, and they didn't, other than saying it's unibody and those can never be repaired. That was rejected in Carson, rejected in Baldwin, and they don't say anything else. If there was a problem, for example, in the Wray case, there were allegations that the car was shimmying, the front end was shimmying, and at speed it was listing to the left. Anything like that, some cosmetic problem with the repair, some other problem that suggested a safety concern, they would know about it because they had the car for about a year before they turned it back into Mercedes financial credit. Where are the facts? They not only alleged an original complaint, but they alleged a first amendment complaint, and then after we filed our motion to dismiss and raise all of these things, they filed a second amendment complaint without permission, and it said none of those things. The second amendment complaint, even though we called them out and said where are the facts, it said nothing about the specific problems, either mechanical, safety, or cosmetic with the Mercedes. Why? Because presumably there were none, because these lawyers do this all day long. These are the same lawyers who were in the Carson case and the Baldwin case. They know how to plead these things, and if they had the facts, they would have alleged them. They don't. This case is on all fours with Baldwin, and Baldwin was an appeal from the sustaining of Demer. You're headed toward your time limit. Do you want to talk about subrogation? I do. Sorry, Your Honor. With respect to subrogation, our main case is the Chandler case, and that first party insurance carrier pursues its subrogation right with respect to repair costs on an auto directly against the tortfeasor or the tortfeasor's insurer. It can do so without violating the made whole rule. Well, I thought that they, that both Chandler and another case were talking in terms of ripeness, and they basically said he hasn't, they haven't gone against the defendant and demonstrated that they can't collect against him, and they don't have a, but here they did. They went against, they did file that lawsuit, and they did get a judgment, and they did demonstrate they couldn't collect. So why, I thought that those cases really left the question open by really reading as a ripeness problem. Well, it did state it in terms of ripeness and standing, but the principles it enunciated apply here, which is what did Liberty do to foreclose Mr. Copeland's opportunity to recover all of his damage from the third party tortfeasor, not just Infinity, the carrier, but Mr. Lowenthal, himself. What it did was take, it didn't, it took the, more of the money from the insurance company such that there wasn't enough left to cover the potential judgment. But that's not the standard under Chandler, number one. The standard under Chandler is But I thought Chandler never got there, that's what I'm trying to say, and never really dealt with that question, and recognized that there could be such a situation, but it hadn't, but he hadn't taken the steps, and here he did take the steps. So let me back up. There are two reasons why Mr. Copeland didn't recover his diminution in value claim against Mr. Lowenthal or Infinity. First is, Infinity's position is that they don't cover diminution in value. So they would have never paid him one cent of their limits toward the damage. But they may be wrong. But they may be wrong. But that's not Liberty's fault. Just because they didn't pay it doesn't mean that it's our fault. And number two is, they claimed that they couldn't collect it. Now, Mr. Sparks had earlier Let me back up a little bit and just see if I can get the law straight, and then we'll get back to the facts, and you'll get your eight minutes. We're taking them over time. Okay. I'm sorry. What obligation does your client have to its policyholder not to make a subrogation claim that would operate to his detriment? We cannot pursue a subrogation claim that would prejudice his right to be made whole. Okay. So, and to make a slightly more precise question, let's imagine that we have a policy on the other side that has a fairly low cap, and that your subrogation claim will take out most of the money that's available in the insurance, and that the claim that he might have will be for more than the cap, so that he's got to have some of it to go against the actual insured. That's correct. And what happens if the insured is judgment-proof? Do you have the right to ask for subrogation when it will put your insured in the position of getting only some insurance and the rest of it as to that, the other guy's judgment-proof? Can you do that? If they're judgment-proof, it would be a problem, but that's not the case here. Mr. Sparks, I'm sorry. No, let me ask. So that's a problem, meaning you can't do it? Well, you couldn't do it if it turned out that they were judgment-proof, right? So you can't do it. Okay. But at the time we collected our subrogation, none of that happened, number one. And number two, there's— Has the lawsuit been filed in the Supreme Court yet? No. No, that was a year later. We collected our subrogation claim a year before they did anything to pursue their claim against Mr. Lowenthal. Okay, so let me ask you a different question. I'm just kind of working my way through this in my head. So if it turns out that you're forcing him to take some of his money from the actual insured as judgment-proof, you can't do that. Is that so far so good? But that's not the fact. I understand. So far so good. Well, what about—maybe it would make my life more difficult. You know, if you've got an insurance company on the other side who recognizes liability, they tend to pay. And if you've got somebody on the other side who is not insured or not covered now, the insurance company doesn't pay, that's a more difficult case to bring. So you've made his life more difficult, even though in the end he may be able to recover. Can you do that? Yes, you can. There's nothing in the policy or in any case law governing the implied covenant that suggests we can't force him to go pursue his claim against both the tortfeasor's insurance company and the tortfeasor himself. And that's what Chandler acknowledges. Chandler says in several spots, you have to go against the insurer, and if there are inadequate limits, you go against the tortfeasor. Only if the tortfeasor is judgment-proof, as Your Honor said, does it become a problem in terms of made whole. That's not the case here, Your Honor, if I could— Okay, well, now we've been represented. I heard him say that he is judgment-proof. But there's no allegation of that in this complaint. We called them out again in our motion to dismiss and said, you've never proven, you've never even alleged that Mr. Lowenthal was assetless or judgment-proof at all. And how could it be, Your Honor, because the only remaining amount due on the $10,000 small claim judgment, according to them, would have been about $1,000 because there was $9,000 remaining in the infinity policy and had infinity recognized diminution of value and paid it. That would have left $1,000. There's no way Mr. Lowenthal couldn't pay $1,000. I got it, I got it, I got it. Okay. Because that's a critical fact that's not alleged here and can't be under Rule 11. They have no facts to allege it. I got it. Okay, thank you. Thank you, Your Honor. You know, some judges are actually strict on the clock. As you might have recognized, I'm a total patsy. Would you put eight minutes on the clock, please? I should have taken your advice about not being the second person, but I only heard it today. Good morning. My name is Charlie Danaher. I represent infinity. The first, about half of what you heard up here was that a tort feeser can be sued for diminished value in California. We don't dispute that. They could sue in small claims. Your Honor, the question is what you insured him for. That's not what we insured him for, but Copeland can sue Lowenthal for diminished value in recovery. I'm not so sure that you're right as to what that policy reads. I read the policy as for third-party liability as property damage, which is not limited to physical damage. On damages for property damage. And so the damages is, why isn't the damages for property damage whatever the state law says the damages for property damage is? And if, as illustrated here by the fact that he got the recovery in superior court, there was whatever we're calling the diminution of value, whether it's physical or market-based or whatever, there was a recovery for it. Those damages are for property damage. What else are they for? Well, it's for diminution in value. No, it's damages for property damage. Why not? Because they put the word physical damage to tangible property. Okay. So it's damages for physical damage to financial property. There was physical damage to physical property. And that's why he got the damages from, in the superior court case, no? They can recover in a tort claim diminished value under California tort law. And as Judge Fletcher pointed out, the question is, does our policy cover that once they get back? So to me, the question is, is diminished value in whatever sense we're using it here, and I think we're using it in two senses, damages for physical damage to property? And of course it is. What else is it for? It's for the cost of repair. It's for the labor costs that go into it. It's the cost of repairing the car. It's not for what he brings it back to the court. But it's whatever the damage is that this person suffers because of the physical damage to his car. Damage is for that. You know, I think I owe an apology to the panel, because the cases that appear to be most directly on point are on pages 7 and 8 of the... But they're about something else. No. These are the California Supreme Court cases which I believe govern this. Okay. Go ahead. On pages 7 and 8, the appellant cited a string cite, and it has the Reddipack case on, which was written by Judge Liu, and I believe that represents the most comprehensive and best distillation of California law on the issue. He talks about the Geddes I case, the Geddes II case, the Hogan case, and then we could also talk about the Vieira and Goodstein cases, which are cases from the Ninth Circuit. Every one of those cases involved damage to property that was not fully or completely repaired. And then... That was not what? That was not fully and completely repaired. So in Goodstein, you still had polluted property. In Geddes, you still had plaster that wasn't fixed correctly. Yeah, but we're talking about automobile policies, and if you just look at the language of your policy... I understand. And they're using actually broader language. They use the because of language in those cases. Yeah, but can we talk about the language in your policy? Sure, which is more restrictive. Okay, so let's look at the definition of property damage. And why are you saying that this definition of property damage excludes the diminution in value of the property as on account of the physical damage done to the property? Why are you saying... Because those are consequential, intangible economic damages which flow from that. In other words, diminution in value is inchoate. It's the loss in market value. By definition, that's what it is. Of course it is. That's right. But are you saying that this property damage definition covers only physical damage to the actual vehicle, and that's it? That's not what I'm saying. That's why I said I should have done a better job with the Hogan and Geddes 2 case, because Geddes 2 makes it very clear that you can only recover intangible or inchoate damages which are required to repair or remediate the tangible property. The money line is on page 609. It's... So what's the citation? Because I don't have that case in front of me. Sure. It's Cal 3rd... I'm sorry, 63 Cal 2nd, 602 and... I'm sorry. Start over again. You got me confused. They refer to it as Geddes 2. No, no. Give me the citation again. Sure. 63 Cal 2nd, 602 at page 609. Okay. 63 Cal 2nd, and then say it again. 602 at page 609. And page 609 is where you see the money quote, and that is and Vieira and Goodstein, which applies Washington law, but comes to the same conclusion. In every one of those cases, the car, the property, whatever, there was no cars, but the property was not adequately repaired, and they sought something that was an intangible, inchoate, consequential damage. Well, but see, it seems to me that this was adequately repaired in the sense that, and I'm going to disagree with them for the purposes of the question, but the car is running, it is safe, it has been repaired, but there's been a diminution in value because any sensible buyer, realizing that it has been repaired, will pay less for it than if there had never been an accident. That's the very definition of a stigma damage, yes. That's exactly right. If you buy a house where somebody's been murdered in it, you probably pay less because of the fact that it's been repaired. Well, that's different, though. I mean, the notion... I mean, that's sort of the idea, but the other one is because of some non-irrational notion that there may well be some inchoate, something wrong with this car. But it actually may not be irrational because there may be someone else who thinks that. I mean, down the road, even if I think it's irrational, the market may not think it's irrational. And the way it comes up is it'll appear on a CarMax report, and so when they go to resell the car, somebody will say, I'm not going to pay as much for a car that was in an accident. And what I'm saying is, under the definition of property damage in this policy, and especially under Getty's, too... This is what I'm trying to understand, though. What... If this isn't a damage for the physical damage that was done to the car, what is it damages for? It's definitely damaged the physical, tangible property. The car was damaged. And the recovery, the damages, which he got in this period of time, is for that. So the statute... So the contract, in terms, covers it. What they received in a tort claim underneath is completely irrelevant, other than what that... But you're covering damages... I mean, this is a liability policy. That doesn't... It seems a little strange to say that in a liability policy, what you get in a tort claim is irrelevant. I mean, because it seems to say it's exactly irrelevant. It's what damages you get damages, it seems to me, as a reference to what you would get under the law for this thing, for the property damage. You can recover all sorts of things in tort actions against the insured. But the question is, once you recover those, are they covered under the... I understand. And it appears that they are, if they're damages for this physical damage. Exactly. To repair... And that's where I get back to Getty's, too. Page 6... I mean, you can't get damages for, under this provision, for hitting somebody for personal injury. But this is a measure, and one of the cases say it's a measure of the damages for the physical injury to the car. It certainly is. And they can recover it all day long in a tort case. But that's what the statute... But that's what the contract says you're covering them for, damages to... For physical injury to the car. For physical damage to tangible property, the tires, the car. And then in the statute, you get the overhead. Because that's technically in Co-8. And they say, yes, you get the overhead because that is how you repair the car. Yes, it's in Co-8. It's intangible. But it has to be tied to the remediation or repair of the insured property. But that's clearly wrong, even under your definition of property damage, because you say property damage means physical damage to tangible property, including loss of use. Wait a minute. That's not physical damage. Your Honor, loss of use is an entirely different category of damages, which they did not... Well, I understand that. But as soon as you say physical damage means physical damage to the property means physical damage, including loss of use, you've already given me something that tells me physical damage is a term of art rather than a literal physical damage. Well, if that is an argument you find persuasive, I would ask for an opportunity  to go to the district court and argue that it was not an argument raised in front of the – in fact, in front of the district court, Your Honor, they filed a complaint and argued to the district court there was no coverage. And now they come up on appeal and they're arguing, yes, there's coverage. So, I mean, I don't – I believe it's probably waived. It's up to you to decide that. They said in the district court that you didn't cover this? They argued that the infinity policy was illegal because it did not cover diminished value. And I'll give you the records. They cited it five times. We filed the motion to dismiss. In opposition, they didn't dispute it. Well, it didn't as a – it did not, in fact, cover it. You refused to cover it. So in that sense, you didn't cover it. What they said was we issued a policy, and I can give you the records. They said it four times in their complaint and twice in the district court in opposition to the motion to dismiss. It wasn't covered. And that it's an illegal policy because it violates insurance code section 11-580, which is actually— That may be right if it doesn't cover. And you argued that it didn't cover, right? We argued it didn't cover it, and I don't know what else the district court could have done with it because everybody was in agreement down there that there was no coverage for it. It was only upon appeal that they changed their position and are now arguing that there's coverage and they're citing other statutes. But down below, they argued it was an illegal policy that had to cover it because of California statutory law. They never argued coverage down below. Counsel, you cited a number of California Supreme Court cases to us. Do you think it would be beneficial if this court were to certify a question to the California Supreme Court on precisely this issue? I understand you're pointing to cases that have similar issues, but into this case, this issue about diminution and value, would it be helpful to have a California Supreme Court case once and for all talk about this? It certainly would. I mean, they did not address this issue in the automobile context, although I do believe, and I know you have read the cases, but Geddes 1, Geddes 2 in the Hogan case, and again, this is distilled by Judge Lew in the Reddipack case. I do believe they've addressed it. I don't know how interested they'd be in it, but if you certify it, I'm sure they would take it and address it. But it's an issue that's of widespread public significance. I mean, there's lots of car accidents and people do make diminished value claims from time to time. I'm simply saying that, at the risk of repeating myself, this was not what was argued in the district court. I mean, they argued just the opposite. They were arguing it was an illegal policy, and because it was an illegal policy, you had to void out the provisions and therefore cover diminished value. They weren't focusing on this. They didn't oppose it. I don't know what else the district court could have done other than throw this case out. What about the duty to defend question? Okay. In footnote 9 of our respondents' brief, we cited the Ninth Circuit law that says it's not your typical duty to defend analysis when you're dealing with a legal issue like coverage, policy interpretation. It's not the potential for coverage. There's either coverage or there's not, and if there's no coverage, there's no duty to defend. It's not what you often see. Well, does that matter to your understanding of what the liability coverage provision means, whether they were seeking what you're calling stigma damages, whether they were seeking what you're calling stigma damages, or whether they were seeking some version, as we were discussing before, of unrepaired damage, which perhaps hasn't been sufficiently articulated? Does that matter? If it were the second, would you have a duty to defend? Yeah. It would be better for me all the way around if we were to just, if we were to call it stigma damages instead of unrepaired damages, but courts across the country I'm asking you whether if you, whether if the, what they were seeking in superior court could be, and I have not looked at the pleadings from that, could be understood as the physical remnants of what wasn't repaired, would you have a duty to defend then? No, I don't believe so, because... Why not? Because we've paid the repair costs, and Getty's wanted to... But where does it say under the liability coverage that you only have to pay whatever repair costs were incurred as opposed to what the damage was? But all that could be left, if you've repaired everything there is to repair... But that's the question, not the answer. Okay. If you've repaired everything there is to repair, the only thing left is stigma or diminution... I understand, but the allegations and the complaint is that they didn't repair everything. Maybe everything that was repairable, but not all the damage. And I understand... Not all the physical damage. And if they cited an unpublished case from the Washington court where the car was still squeaking, I guess, and so maybe the car still squeaks, that is something that couldn't be repaired. When they go to resell the car, that is diminution in value. Otherwise, Infiniti can only pay what it can pay for the physical damage. Well, suppose they can prove up the notion that there was some, you know, crutch thing, some crutch mechanism that can only work once, and once you hurt it bad enough, it's never going to work again. But that's not diminution in value. Why? Because diminution in value means... If that's not diminution in value, then they could recover for it. Then it is covered. Is that what you're saying? I'm saying diminution in value means it's the loss of sale when you go to resell. That's what you're saying it means. I'm saying... I think that's just the common usage of the word. If it's something physical... That's not my understanding even of the case law. The case law recognizes that there is a category of damage of the kind I'm describing that may not be fixable, but it's not in your mind, or it's not in the market's mind. I think once you call it diminution... I'm sorry. Well, you're calling it diminution in value. Their complaint pleads diminution in value. That's their whole entire lawsuit, is that when they brought it, they didn't plead it. They should have. But when they brought it back to the lesser, the lesser dinged them because there was, you know, the car had been in an accident. That's not what happened. They didn't plead it. They actually returned the car to the lesser and nothing happened. But diminution in value means decreased in market value on resale. I mean, that's the definition that's been adopted by virtually every court in the country. And the reason that we get a diminution in value after an accident is that a rational buyer suspects without being able to be sure that their car has not been repaired to the condition that it would have been had the accident never occurred. We're talking about a suspicion of physical problems. We're not talking about stigma like somebody died in the car. It could be, or it could be stigma on a car match. I'm sorry. But you're right. It could be either. And they weren't clear on that because, quite frankly, they didn't experience any diminution in value in this case. Judge Copeland returned the car and there was no problem with the lease. The lesser took the car back. As my counsel said, if he had any kind of stigma or any kind of residual damages, he would have pled it. He would have said, when I brought the car back to Mercedes-Benz, they charged me $500 because the car was in an accident or because it was still squeaking or was out of alignment. He returned this car without incident and went ahead and filed a class action complaint based on this. Based on a $10,000 small claims court judgment that he got. But we've cited, I believe, some cases that define diminished value. And again, and I'm at the risk of sounding redundant, in Geddes 1, Geddes 2, Hogan. In fact, the Hogan case made a point that the lumber that was damaged could not be repaired. And then when they sought these inchoate, intangible, consequential damages, this court said, no, not even under the because of, the broader because of. Well, I want to hear from the other side on the question as to whether this was argued below in terms of what the policy covered. But I have to say that, I mean, we all drive cars. We all have insurance. It strikes me that at the bare minimum, the language in terms of what's covered here in third-party liability insurance is somewhat ambiguous. As to Part 2, you have a very explicit exclusion for diminished value. There is no such exclusion here. And thank you, Judge Fletcher. I wanted to address that when I first stood up. There's two reasons that I have two responses. The first is the Supreme Court case in Waller 11, Cal 4th 1, at page 16. It says, before even considering exclusions, the courts must examine the coverage provisions to determine whether a claim falls within the policy terms. So in other words, you don't even get to the exclusions unless you find coverage under the insuring clause, which is what we're looking at in this case. Secondarily, under Section 11580.1 of the insurance code, we cannot add a diminished value exclusion unless we provide it for diminished value coverage. 11580.1. I understand that, too. The question then is, what did you cover? And as somebody who's driven cars and insured cars for longer than I care to admit, I read that policy as, if I'd been given this policy and I'd then been asked the question, well, you hit somebody and he comes back at you for the cost of repair and the diminution of value, are you covered by this? And what else? Of course, I'm covered. What else am I buying insurance for? And I read the policy and I said, well, of course, I'm covered. Well, all I can say is I've tried to give this Court cases that interpret the difference between for and because of. And if you were to take the definition, you would be covering damages for damages to tangible, physical damage to tangible. But this is liability. It's damages for the liability. I'm sorry. That's the other problem here, is that the exact language in the policy is, let's see if I can find it. They'll pay damages up to the policy limits for bodily injury and property damage for which an insured person is legally liable. Right. So it's the damages for which he's legally liable for property damage. Now, how can this not be damages for which he's legally liable for property damage? He went to court and he got a judgment. I understand, but you've not read the, you've used property damage without its definition. It would be damages for damage to physical. It means physical damage to tangible property, right? Which is dents to the car, tires. For bodily injury and physical damage to tangible property for which he's legally liable. He's still in the same place. He's legally liable for this. I understand that I can't do better than the cases we cited, which indicate. And those are liability cases. This is a liability policy. And so when the Vieira court says, when you put in the word physical, that is an important, that is a very important thing. And the courts across the country have basically said. Yeah, but you put in physical and then you include with an addition of physical loss of use, which has nothing to do with physical damage. So physical damage can't mean physical damage in the literal sense. I understand. And a loss of use claim is different. I understand it says including. And I briefed this issue if the court would like additional briefing. Again, coverage wasn't even raised in the district court. They conceded it. Well, I want to hear from the other side. And I would have briefed that issue had they made your argument, which I understand. Well, the argument jumps out at you. I mean, it's not a hard argument to find. I agree. But I wasn't going to engage in anticipatory rebuttal against arguments that weren't made in the district court, haven't been made in front of this court. I understand your question. It's a really good one. But I. And now a flattery will get you nowhere. What's that? Flattery will get you nowhere. Still a good question. Thank you. Yeah, we've taken you well over. Yeah, thank you. So was it raised below? I'm sorry, Your Honor. Was it raised below? Did you argue that this was covered under the policy? Or did you just say it's not covered under the policy and the policy is illegal? We pled both in the alternative under Rule 8D, Your Honor, which respectfully we're allowed to do. Go elsewhere. Yes, sir. It's in the record citations for the. We pled it was a breach at location 184. I'm sorry. What is it? This ER 184? Why are we in ER? Yes. Forgive me. ER 184. Is this the complaint that you're in? Yes. Yes, Your Honor. ER 184, 193, 198, 325. And the location and the location that they're referencing is probably 200 where we say, well, if you say that you don't cover it, then these are, in fact, illegal policies that you shouldn't be marketing in the state of California. When you say if. Now, are these citations not merely to the complaint, but also to argument like notes of authority and argument like briefing to the district court? I can't. I don't have that answer for Your Honor right now. I only have the complaint that I was able to look at during the argument. Okay. Well, we can figure this out as to whether it was properly raised. Okay. Your Honor, and as far as whether or not a waiver, as we note in our reply, we're entitled to actually stand on the complaint if they allege that we've waived something or haven't pled it in a response to a motion to dismiss. Respectfully, I would suggest that the complaint itself sufficiently alleges both a breach and in the alternative, an illegal sale. Yes, Your Honor. So, counsel, going back to the ER pages you just gave us, ER 184, paragraph 21. I know you said you pled in the alternative, so I just want to make sure I'm following what you're saying here. Paragraph 21, you say plaintiffs bring this action pursuant to California law because defendants' infinity and liberal mutualist practice of advertising, selling, issuing, and delivering the policies which fail to provide diminished value coverage or which defendants sold with the intention and objective denying claims for diminished value coverage. That's where you're, the alternative? Yes, Your Honor. Okay. Okay. Briefly, the issue of Chandler, I think Justice Berzon hit well on it, and that is that the first sentence of that opinion literally says, this putative class action presents the court with the question whether an insurer is permitted to recoup a payment from a third-party tort feasor's insurance company before the insured has sued the third-party tort feasor and without first making the insured whole. And so that's the very first sentence of that opinion, and as the court noted, that's not what we have here. And I would also note that was a $63.49 subrogation claim where there was no effort to sue the third-party tort feasor. Did you make any allegation, I confess I didn't find it, that in fact Mr. Lowenthal is judgment proof? We did not use those words expressly. What we pled is that he had his license suspended and liens were filed on his property. That's quite different from judgment proof. Well, yes, Your Honor. It's not the same thing, but in all intent, for all intent. And how much was left over after the, assuming the policy covered the diminution in value, how much was left over that would have been an obligation for Mr. Lowenthal personally? That $16,000 is what they ate up out of the policy, and it was a $25,000 policy, Your Honor. You give me too many numbers. I asked you a very specific question. Your Honor. Okay, so they get the subrogation amount. Yes. Then you have the amount that Mr. Lowenthal owes under the judgment. Yes, Your Honor. How much of that amount is going to come out of Mr. Lowenthal's pocket personally if the insurance policy covers the $10,000 or what's claimed? If they pay approximately $1,000. So $1,000. Yes, Your Honor. Okay. That's not a lot of money. You got to be pretty poor to be judgment proof for $1,000. Well, and with respect, Your Honor, we are wading off into the facts on this, and I think that we were allowed to get to the facts. Well, I mean, I asked you what's alleged, not alleged. I guess you'd allege, well, they required us to go against Mr. Lowenthal for $1,000 as a result of their subrogation claim. That's what you would put in. Yes, Your Honor. Oh, that's pretty thin. Okay. So finally, Your Honor, I would point out that in the Carson case, that this is the case that the district court relied on heavily, and both the defendants rely on, or excuse me, FLEs rely on here. That case actually went to a trial. And if I may push back a little bit on the suggestion that, well, they found that this wasn't a proper claim. Actually, what happened in the Carson case was 2008 Honda, it was a new car, is the judge struck the experts, and so Ms. Carson was left with only her own testimony to say that this vehicle was not brought to its pre-accident, safe, mechanical, cosmetic condition, and the court said after a trial on the facts, the court said that's not sufficient to sustain that. So if the court has any other questions. Okay. Thanks very much. Copeland and Lowenthal versus Infinity Insurance and Liberty Neutral Fire Insurance submitted for decision. Thank you. Thank you. Thank you for waiting.
judges: W. Fletcher, Berzon, Owens